# ELIE VAN RAALTE et al., Appellants, v. ROSA GRAFF et al.

## In Banc, July 2, 1923.

1. **WILL CONTEST: Undue Influence: Demurrer to Evidence.** In considering a demurrer offered by the defendants at the close of all the testimony in a suit brought by nephews and nieces not mentioned in the will to set the same aside as being the result of fraud and undue influence exercised upon testator, the whole evidence must be searched on an appeal by contestants from a verdict and judgment in favor of the defendant proponents, and all favorable inferences must be drawn in favor of plaintiffs, and defendants' testimony, where contradicted, must be treated as false, and plaintiffs' testimony, whether contradicted or not, must be accepted as true.

2. ———: ———: ———: **Substantial Evidence: Scintilla Not Enough.** In searching the record on appeal to determine whether a case was made for the jury in a suit to set aside a will on the ground of fraud and undue influence exercised upon testator, substantial evidence to support the charge must be found, as the scintilla doctrine is no longer the rule. The burden, in such case, to establish fraud and undue influence, is upon the contestants, unless there is a showing of confidential relations; and this is true where it is claimed that the chief beneficiary had poisoned the mind of testator by falsehoods concerning contestants.

3. ———: **Fraud: False Statements by Beneficiary.** There was testimony at the trial that the childless testator's sister, who was the chief beneficiary under his will, had made false statements to him concerning the contestants, who were his nephews and nieces, and had sought to poison his mind against them; but it was conclusively shown that in every such instance not only was he informed that such statements were false, but he censured her and in no instance was he deceived thereby or relied upon their truth. *Held*, that the issue of fraud based upon such falsehoods was properly withdrawn from the jury. Fraud implies deception and reliance upon false representations; and where, in such case, it is clear that the testator was not deceived by the falsehoods and did not rely upon them, there is no issue of fraud for the jury to determine.

299 Mo.—33.

4. ———: Undue Influence: Meaning: Must Shape the Will. It is not sufficient to overthrow a will that evidence be produced from which it may be inferred that the chief beneficiary had great influence with the testator; the influence must be undue. Undue influence is not that influence which arises from affection or the mere impulse to gratify the wishes of one beloved; but it is the influence exercised upon the testator at the time he executes his will in such a way as to amount to over-persuasion, coercion or force sufficient to destroy his will power. Notwithstanding there is testimony from which it can be inferred that the childless and unmarried testator was very fond of his sister, who was made his chief beneficiary and with whom he lived for many years, and that she had great influence with him, still, if there is no evidence at all that she attempted to exercise her influence upon him in the matter of his will, there is no basis for a charge of undue influence on her part.

5. ———: ———: Statements of Testator. Statements made by the childless testator about the time his will was made, in a conversation with a friend, in which testator complained of the trouble his sister was giving him and stated that she would not allow him to leave anything to his nephews and nieces, are not evidence of the truth of the fact, are not sufficient to show the exercise of undue influence by her in the execution of his will, amounted to no more than a verbal act, and can be received in evidence only as a manifestation of testator's mental condition.

6. ———: ———: Confidential Relations. A sister who provided a home for many years for the bachelor testator, and thereby created family relations which fully justified the gift of the greater part of his large estate to her, cannot be said to have exercised a fiduciary relation to him, where the testimony is clear that he was self-reliant and managed his own affairs and there is none that he ever discussed them with her or any other beneficiary; nor can a presumption of undue influence arise from such relationships.

7. APPEAL: Procedural Errors: Right Verdict. Where the jury, by its verdict for defendants, reached the only result that, under the evidence, could be sustained by the appellate court, the consideration of procedural errors assigned by appellants is unnecessary.

Appeal from St. Louis City Circuit Court.—*Hon. Charles W. Rutledge,* Judge.

AFFIRMED.

*Kinealy & Kinealy* and *Conway Elder* for appellants.

(1) Where the chief beneficiary of a will is charged with undue influence her statements are competent evidence. Coldwell v. Coldwell, 228 S. W. 95. (2) On an issue of fraud a wide latitude is allowed in the introduction of evidence. 2 Alexander on Wills, p. 910, sec. 603; 1 Schouler on Wills, Extrs. Admr., p. 289, sec. 240; Hughes v. Bader, 183 Mo. 630; Derby v. Donahoe, 208 Mo. 684; Sawyer v. Walker, 204 Mo. 133; Wagner v. Binder, 187 S. W. 1128; Palmer v. Huckstep, 197 Mo. App. 512. (3) Undue influence need not be exerted at the time of the execution of a will. It is sufficient if exerted before, and is then operating. Taylor v. Wilburn, 20 Mo. 306; Mowry v. Norman, 204 Mo. 173; Coldwell v. Coldwell, 228 S. W. 95. (4) In a will contest it is proper for the jury to consider the reasonableness of the provisions of the alleged will. 28 Am. & Eng. Ency. Law (2d Ed.) 106; Mowry v. Norman, 223 Mo. 463; Meier v. Buchter, 197 Mo. 68; Dunkeson v. Williams, 242 S. W. 658. (5) In will contests on the ground of fraud and undue influence the declarations of the testator are always competent to show his mental conditions, his exposure to constraint or fraud and the circumstances of the testamentary act. 1 Schouler on Wills, E. & A., p. 294, sec. 243; 2 Alexander on Wills, p. 923, sec. 611. (6) And because of necessity and the issues involved, such statements, standing alone, may be evidence of the facts contained in them. Dausman v. Rankin, 189 Mo. 677. (7) Such statements are competent evidence of the facts when considered in connection with other evidence. Canty v. Halpin, 242 S. W. 94; Teckenbrock v. McLaughlin, 209 Mo. 533. (8) Such declarations are always evidence of the facts when part of the *res gestae.* Gibson v. Gibson, 24 Mo. 227; Teckenbrock v. McLaughlin, 209 Mo. 533. (9) All statements of Jacob Lampert from the latter part of December, 1920, to the signing of the will on January 24, 1921, were part of the *res gestae.*

State v. McKenzie, 228 Mo. 385; Stevens v. Walpole, 76 Mo. App. 13; Roberts v. Trawick, 17 Ala. 55. (10) In fraud cases great latitude is allowed in determining what is part of the *res gestae*. Weinstein v. Reid, 25 Mo. App. 41. (11) In considering a demurrer to the evidence on any issue, the party on whom is the burden is to be given the benefit of every inference which a fair-minded person might draw from the evidence. Burton v. Holman, 231 S. W. 630; Peak v. Taubman, 257 Mo. 390; Parker Washington Co. v. Dennison, 249 Mo. 449; Twohey v. Fruin, 96 Mo. 104; Donohue v. St. L. I. M. & S. Ry. Co., 91 Mo. 357. (12) The evidence in this case was ample to make out a case of fraud on the part of Rosa Graff. Spurr v. Spurr, 285 Mo. 163. (13) Fraud is rarely susceptible of direct, positive proof, but is usually an inference from facts and circumstances. Howard v. Zweigart, 197 S. W. 46; St. Francis Mill Co. v. Sugg, 206 Mo. 148; State ex inf. v. Standard Oil Co., 194 Mo. 155; Massey v. Young, 73 Mo. 260; Hopkins v. Sievert, 58 Mo. 201. (14) Where a confidential relation exists between a beneficiary and the testator, the law presumes undue influence and the burden is upon the beneficiary to rebut the inference. Burton v. Holman, 231 S. W. 629; Sittig v. Kersting, 223 S. W. 742; Cornet v. Cornet, 248 Mo. 184; Kettering v. Norman, 204 Mo. 173; Dausman v. Rankin, 189 Mo. 677. (15) Fiduciary relations are not confined to persons between whom there are business or financial transactions, but they may exist between any individuals. 12 C. J. 421, Confidential Rels.; 12 R. C. L. 234, Fraud and Deceit; Harvey v. Sullens, 46 Mo. 147; Cornet v. Cornet, 248 Mo. 184; Smith v. Williams, 221 S. W. 360; Rayl v. Golfinopulos, 233 S. W. 1069. (16) In a will contest it is proper to instruct as to the descent and distribution of the property in case there were no will. King v. Gilson, 191 Mo. 307. (17) In arguing a case to the jury counsel has the right to put his own construction upon the evidence and draw his own inferences therefrom. 38 Cyc. 1485, Trial; At-

kinson v. United Rys. Co., 228 S. W. 483; Lamport v. Aetna L. I. Co., 199 S. W. 1020.

*Jamison & Thomas, John A. Blevins* and *Karl M. Vetsburg* for respondents.

(1)  There is no substantial evidence in the record of undue influence or fraud upon Jacob Lampert in the making of the will in question, and the lower court should have, at the close of the whole case, given to the jury the defendants' peremptory instruction in the nature of a demurrer to the evidence, to return a verdict for defendants.  Huffnagle v. Pauley, 219 S. W. 373; Teckenbrock v. McLaughlin, 209 Mo. 533; Current v. Current, 244 Mo. 429, 436; Winn v. Grier, 217 Mo. 420, 460; Hahn v. Hammerstein, 272 Mo. 248, 264; McFadin v. Catron, 138 Mo. 197, 219; Ginter v. Ginter, 22 L. R. A. (N. S.) 1024; Tibbe v. Kamp, 154 Mo. 545; Turner v. Anderson, 236 Mo. 523, 260 Mo. 1; Hayes v. Hayes, 242 Mo. 155; Jackson v. Hardin, 83 Mo. 175, 186; Hamon v. Hamon, 180 Mo. 685; Conner v. Skaggs, 213 Mo. 334, 340; Fulton v. Freeland, 219 Mo. 494; Defoe v. Defoe, 144 Mo. 458. (2)  The defendants were entitled, under the evidence, to a peremptory instruction at the close of the whole case, and the errors assigned by appellants need not be considered by this court.  Phillips v. Pulitzer Pub. Co., 238 S. W. 127.  (3)  The evidence offered by appellants on the trial of this case and refused by the court was not of a substantial character and could not, if admitted, in view of all the evidence, have altered or affected the verdict rendered or the judgment of the court.  Fulton v. Freeland, 219 Mo. 494, 520; Seibert v. Hatcher, 205 Mo. 83.  (4)  Declarations or statements made by the testator, but not at the time of the making of the will, are admissible in evidence only for the purpose of showing the state of his affections or feelings toward his relatives, and they are not to be taken as true for the purpose of establishing undue influence or fraud and de-

feating the will. Teckenbrock v. McLaughlin, 209 Mo. 533; Hobson v. Moorman, 115 Tenn. 73; Schierbaum v. Schemme, 157 Mo. 1; Borland on Wills, p. 276; Seibert v. Hatcher, 205 Mo. 83; Lindsey v. Stephens, 229 Mo. 600, 617; Hayes v. Hayes, 242 Mo. 170; Gibson v. Gibson, 24 Mo. 227; Doherty v. Gilmore, 136 Mo. 414; Gordon v. Burris, 141 Mo. 602; Crowson v. Crowson, 172 Mo. 703; Corbett v. Railway Company, 26 Mo. App. 625; R. S. 1919, sec. 508; Comstock v. Hadlyme, 8 Conn. 263; Robinson v. Hutchinson, 26 Vt. 38; Kennedy v. Upshaw, 64 Tex. 411, 418; Boylan v. Meeker, 28 N. J. L. 274, 290; 1 Alexander on Wills, p. 61, sec. 53; 2 Alexander on Wills, pp. 917-918, sec. 608; Note to In re Colbert Est., 107 A. S. R. 465; Note to Roberts v. Trawick, 52 Am. Dec. 167. The alleged statements of Jacob Lampert not made at the time of the execution of the will must be entirely eliminated from the record in considering the question of undue influence or fraud. (5) The evidence of the contents of former wills made by Mr. Lampert establishes a fixed purpose in his mind with regard to the disposition of his property and destroys the charges of undue influence and fraud in the making of his will. Lindsey v. Stephens, 229 Mo. 617; Yant v. Charles, 219 S. W. 572; Current v. Current, 244 Mo. 435; Crowson v. Crowson, 172 Mo. 702. (6) Statements of Mr. Lampert at the time of the execution of the will in question were part of the *res gestae* and as such are admissible in evidence, not only as proof of the state of his affections for his relatives, but as proof of the facts stated by him at said time. Hayes v. Hayes, 242 Mo. 155; Teckenbrock v. McLaughlin, 209 Mo. 533; Ginter v. Ginter, 22 L. R. A. (N. S.) 1024; McFadin v. Catron, 138 Mo. 197, 210; Nelson v. McCallahan, 55 Cal. 308. (7) Undue influence, to invalidate a will, must be of such a character as to destroy the testator's free agency and to substitute for his will the will of another person. The influence which arises from affection and kindness is not undue influence. Seibert v Hatcher, 205 Mo. 83; Fulton v. Freeland, 219

Mo. 494; Sehr v. Lindemann, 153 Mo. 276; Kischman v. Scott, 166 Mo. 214; Land v. Adams, 229 S. W. 158; Norton v. Paxton, 110 Mo. 456; Gibbony v. Foster, 230 Mo. 106; Jackson v. Hardin, 83 Mo. 185; McFadin v. Catron, 138 Mo. 197, 219; Campbell v. Carlisle, 162 Mo. 634, 646. (8) Statements or declarations made by Rosa Graff in the absence of other legatees and in the absence of an allegation or proof of conspiracy or privity of design are not admissible in evidence. Schierbaum v. Schemme, 157 Mo. 1; Teckenbrock v. McLaughlin, 209 Mo. 533; Seibert v. Hatcher, 205 Mo. 101; Defoe v. Defoe, 144 Mo. 458; Garland v. Smith, 127 Mo. 567; Wood v. Carpenter, 166 Mo. 465; King v. Gilson, 191 Mo. 307; 38 L. R. A. (N. S.) 733, note. (9) Evidence as to hard feelings against any one of the proponents of the will is inadmissible. Andrew v. Linebaugh, 260 Mo. 623, 648. (10) The evidence did not establish a confidential or fiduciary relation between Rosa Graff and Jacob Lampert. Kischman v. Scott, 166 Mo. 214; Land v. Adams, 229 S. W. 158, 163; In re Brand, 173 N. Y. Supp. 169; Campbell v. Carlisle, 162 Mo. 634; Smith v. Williams, 221 S. W. 360; 2 Words and Phrases, p. 1423; 2 Pomeroy Equity (3 Ed.) sec. 956; Studybaker v. Cofield, 159 Mo. 596; Lee v. Lee, 258 Mo. 599. (11) Rosa was the youngest of the Lampert family and was the favorite of her mother and Jake from childhood, and Jake's action in making her the principal beneficiary under his will was the result of his love and affection for her and not the result of fraud or undue influence on her part. Kerr v. Lunsford, 31 W. Va. 659, 2 L. R. A. 668; Campbell v. Carlisle, 162 Mo. 647; In re Brand, 173 N. Y. Supp. 169. (12) There is no evidence of fraud in the case of facts from which fraud could be fairly and reasonably inferred. Noble v. Buddy, 160 Mo. App. 323; Younger v. Hoge, 211 Mo. 458; 26 C. J. p. 1162, sec. 75c; Anderson v. McPike, 86 Mo. 293.

REEVES, C.—Statutory will contest. The question below was whether one Jacob Lampert, the testator, was

fraudulently misled or wrongfully influenced in the execution of his alleged will.

The contestants were nieces and nephews of the testator. The proponents of the alleged will, all named as defendants, were a sister and her husband, other relatives, friends and sundry charitable institutions. Rosa Graff, the sister, was the chief beneficiary.

The court withdrew the issue of fraud from the jury and submitted the question of undue influence. The jury sustained the will and, after an unavailing motion for a new trial, contestants, as plaintiffs, have appealed to this court. The value of the estate affected is in excess of one million dollars.

Jacob Lampert was a cigar manufacturer residing in the city of St. Louis, was never married, and died February 19, 1921. The alleged will, executed January 24, 1921, was admitted to probate in the city of St. Louis on the 23rd day of February, 1921, and this suit was filed March 18, 1921.

The gravamen of the petition is that "the defendant, Rosa Graff, and her husband and daughter lived with him, testator, and he provided a home for them, and the defendant, Rosa Graff, as a member of his family, occupied a confidential relation towards him, and had and exercised great influence over him, and advised and consulted with him as to his affairs and his other relatives, and he placed great trust, reliance and confidence in her and in what she told him; that for some time prior to the death of the said Jacob Lampert, the defendant Rosa Graff, fraudulently and wrongfully contriving and intending to cheat and defraud all the other heirs and next of kin of the said Jacob Lampert out of their share and interest in his estate, did, by fraud, art, deception and undue influence, by words and act, and by habitually reporting to him words or acts of any of plaintiffs which were capable of being misconstrued as uncomplimentary to said Jacob Lampert or as indicative of want or respect or affection for him, and by detailing to said Jacob

Lampert statements concerning him alleged by said
Rosa Graff as having been told her by other persons as
having been made by some of plaintiffs and as tending
to create in the mind of said Jacob Lampert suspicion
or dislike as to plaintiffs or some of them, and by false
and untrue statements to said Jacob Lampert as to the
feelings of plaintiffs towards him  and of things which
said Rosa Graff alleged plaintiffs or some of them said
of or concerning him, fraudulently and wrongfully poi-
soned the mind of said Jacob Lampert against plaintiffs
and fraudulently and wrongfully caused, procured and in-
duced the said Jacob Lampert to become imbued with the
false idea and impression that plaintiffs were inimical to
him and had no affection for him, and were not entitled to
share in his bounty or property, and that consequently
the whole bulk of his property and fortune should be left
to her, the said Rosa Graff, to the exclusion of plaintiffs
and each of them, and relying upon and deceived by the
aforesaid fraudulent and wrongful conduct, acts and
statements of the defendant Rosa Graff, and misled, in-
duced and unduly influenced thereby, the said Jacob
Lampert executed as his last will and testament the said
paper writing hereinbefore set forth, and plaintiffs
state that by reason of the facts above stated the said
paper writing is not the valid will or testament of the
said Jacob Lampert, deceased, and is not entitled to be
probated or enforced as such.''

The several answers of the defendants alleged the
due execution of the will; its admission to probate, and
that by the terms thereof Dorsey A. Jamison was named
as executor of the estate involved and that he had duly
qualified as such and entered upon his duties.  Said an-
swers denied generally and specifically the allegations
of the petition with respect to all questions of fraud and
undue influence.

The proponents of the will made due proof of its
execution and the testamentary capacity of the testator.
It appeared from the testimony of witnesses offered by

plaintiffs that the said Jacob Lampert had executed four wills previous to the one in controversy, the first of which was dated about August 19, 1906, the second January 22, 1910, the third October 2, 1912, the fourth September 2, 1914, and the final one, now under review, January 24, 1921. The plaintiffs were never mentioned in any of these wills, but two sisters of the deceased, the mothers of plaintiffs, had been mentioned ·with bequests while living, but the defendant Rosa Graff was named in all of them and the bequests for her were larger than those of her sisters. Said two sisters died before the execution of the will in controversy. At the execution of the alleged will, the testator expressly stated that he did not desire to remember his nieces and nephews, the plaintiffs in this action, for the reason, as he said, that he had not done so in any previous wills and "that he did not believe it was a good thing for young people to have a lot of money thrust upon them, and that he had worked for his money and that they can work for theirs." Moreover, he had assigned the further reason that such nieces and nephews "had not shown him the proper respect and consideration." It was conclusively shown by plaintiffs that at the time of the execution of the will in controversy, and at all times prior thereto, the testator "was of very decisive character and made up his mind on his own investigation, and when he made up his mind he was determined."

One witness for plaintiffs said: "I don't believe that any living person could influence him against his convictions or could sway him in his ideas after he had made them up for himself."

The testator for several years before his death made his home with his sister, Rosa Graff, the chief beneficiary, her husband, Bernard M. Graff, and her daughter, Esther Graff. He was very fond of Rosa, his sister, and Esther, his niece. In fact he was lavish in his expenditures for them.

Numerous witnesses, testifying on behalf of appellants, said that Rosa Graff, by various enumerated acts

and statements, had attempted to create discord and ill-feeling between testator and the appellants. These several acts and statements transpired over a period of several years before the death of the testator, and were characterized by appellants' counsel as "tale bearing" and might be more properly described as mischievous gossip. For instance, one witness said that he talked with testator in October, 1915, in the city of Washington, D. C., at which time testator told witness that he was "worried over my family troubles," and then explained by saying that "I have a sister and a little niece I take care of" and that "his sister brings in things and that is why he felt blue and the things were about his nieces and nephews and the nieces, some of them are very good and that it wasn't true," and I said, "Why does your sister do this?" and he says, "She just wants to bring in a fuss amongst relations," and I said, "Why?" and he said, "All on account of my money. She don't know I have as much as I have and believes in case I die there will not be anything to support her or the child."

Appellants' own witnesses differed as to the feelings of testator for appellants. Some said that he had an affection for them and others testified to the contrary. It was shown that he had unpleasant controversies with some of appellants, and it appeared that in each and every instance where Rosa had engaged in "tale bearing" or mischievous gossip, appellants had been able to inform the testator of what they conceived to be the true facts.

Another apt illustration of the nature of appellants' testimony may be found in an event where a party was given in honor of one of appellants, who had returned from military service, over seas, in the World War. Testator did not attend this party in honor of his nephew, and, upon being questioned as to the reason why, said he knew nothing of it, and was then informed that Rosa had been instructed to extend the invitation, which she had not done. There was other testimony that Rosa had

either failed to communicate information from appellants to testator or had communicated false information. However, as stated, in each and every instance appellants were able to inform testator as to the facts all of which resulted in eliciting from the testator such expressions concerning Rosa as, ''She just tried to get on the good side of me'' and, ''She must be crazy; I never made any statement to that effect.''

One witness said that testator was always pleasant with his nieces and nephews until Rosa came upon the scene, whereupon he became ''cool.'' Others said that at various times he would make presents in money or valuables to some of his nieces and nephews, always with the admonition that the fact must be kept from Rosa.

One witness said that early in January, 1921, shortly before the execution of the will in contest, she overheard a conversation between testator and Rosa ''in pretty loud tones,'' ''and I heard her say, 'You promised to do it, and don't delay any more,' and Uncle Jake said, 'All right, don't bother me and I will attend to it.' ''

There was testimony that testator on one occasion, because of some differences, left the home of Rosa to reside elsewhere, but was induced to return by her.

One James H. Smith, formerly chief of detectives of the city of St. Louis, testifying for appellants, said that he had a conversation with testator about the middle of January, 1921, at which time testator was complaining about his health but refused to stay at home for the reason that ''Rosie is complaining and fussing and tormenting me so that I am better off outside than I would be inside.'' ''I said, 'What's the trouble now?' He said, 'She was insisting on my making a new will,' and he didn't feel that he was in any danger of dying. He said he didn't consider himself in that condition, and what hurt him more than anything was that she wouldn't allow him to remember an organization that had honored him, as few men of his nationality had ever attained the high position the order had bestowed upon him, and he

wanted to remember them for that. 'Well,' I said to him, 'Why can't you convince Rosie that it is necessary for you to do that?' He said, 'You know what the answer would be to that?' I said, 'Well, Jake, you are not going to forget your nieces and nephews, the children of your two dead sisters, are you?' He said, *'Rosie won't allow me to leave them anything. She will take care of that—she will attend to the nieces and nephews.'* "

The foregoing is illustrative of a vast amount of testimony adduced by appellants, all of which was controverted by the evidence of respondents. At the close of plaintiffs' case defendants interposed a demurrer and, being overruled, they adduced their own testimony, and at the conclusion renewed their request for a peremptory instruction. In the view that we shall express on the case, it is only necessary to consider the peremptory instruction requested at the conclusion of all the evidence.

I. The only issue to be tried under a statutory contest of this kind, as provided by Section 525, Revised Statutes 1919, is "whether the writing produced be the will of the testator or not," and the questions on this issue in this case were whether in making same testator was fraudulently misled or wrongfully influenced.

Issue.

II. In considering the demurrer at the close of all of the testimony, the whole evidence must be searched and all favorable inferences drawn in favor of appellants (Fritz v. Railroad, 243 Mo. 62, l. c. 77), and defendants' testimony, where contradicted, must be treated as false, and plaintiffs' testimony, whether contradicted or not, must be accepted as true. [Stauffer v. Railroad, 243 Mo. 305, l. c. 316, 147 S. W. 1032; Williams v. Railroad, 257 Mo. 87, 165 S. W. 788.]

Favorable Inferences.

III. In searching the evidence on demurrer, so as to determine whether a case be made for the jury, substantial evidence for plaintiffs must be found, as the "scintilla" doctrine is no longer the rule in this jurisdiction. [Williams v. Railroad, supra; Pleasants v. Fant, 89 U. S. 116.] It should be borne in mind that on the question of fraud and undue influence, as here, the burden is on plaintiffs to show undue influence, unless there be a showing of confidential relations. [Sanford v. Holland, 276 Mo. 457, 207 S. W. 818; Smith v. Williams, 221 S. W. 360.] This is true where it is claimed that the chief beneficiary has poisoned the mind of testator by falsehoods. [Spurr v. Spurr, 226 S. W. 35; Gay v. Gillilan, 92 Mo. 250, 5 S. W. 7.]

*Substantial Evidence.*

IV. The trial court very properly withdrew from the consideration of the jury the question of fraud. There was testimony that testator's sister, Rosa Graff, the chief beneficiary, had made false statements to testator concerning appellants and, otherwise, had sought to poison the mind of testator against them, but it was shown conclusively that in each and every instance testator was not only informed that such statements were false but he censured Rosa, and in no instance was he deceived nor did he rely upon the truth of such statements or representations. Fraud contemplates deception and a reliance upon the truth of false representations. In this case testator was never deceived nor did he rely or act upon such representations. In the case of Spurr v. Spurr, supra, 1. c. 39, Division Number One of this court, in an able and an exhaustive opinion by RAGLAND, C., determined that there was an issue of fraud for the jury because the testator in that case "*readily believed the false statements and acted on them*" as the chief beneficiary "had intended that he should." In the case at bar, it does not appear that Rosa intended that the testator should act upon her representations in the preparation of his will, and, as

*Fraud: Falsehoods.*

said, he *did not rely upon her statements nor was he deceived by them.*

. V.   The other question raised by the demurrer was that of undue influence.   This question was submitted to the jury by the trial court and, as stated, the jury sustained the will.   There was testimony that the tes-

Undue
Influence.

tator was fond of Rosa Graff, his sister, and there was evidence from which it might be in-ferred that she had great influence with him, but mere influence is not sufficient to overthrow a will. [Huffnagle v. Pauley, 219 S. W. 373.]   "It is not in-fluence, but undue influence that . . . is necessary to overthrow a will."   [Beyer v. LeFevre, 186 U. S. 124, 22 Sup. Ct. Rep. 769, 46 L. Ed. 1080; 40 Cyc. 1148.]

Undue influence to overthrow a will must be exer-cised upon the testator at the time he executes his will in such a way as to amount to over-persuasion, coercion or force sufficient to destroy the will power of the testator and must not be confused with that influence which arises from affection or a mere impulse to gratify the wishes of one beloved.   [Kleinlein v. Krauss, 209 S. W. 933; Winn v. Grier, 217 Mo. 420, l. c. 459, 117 S. W. 48, l. c. 59; Huffnagle v. Pauley, supra; Gibony v. Foster, 230 Mo. 106; Crowson v. Crowson, 172 Mo. 691.]

There was not one line of testimony that Rosa Graff ever attempted to exercise her influence upon the testa-tor in the matter of his will.   On the contrary, it was shown by the appellants' evidence that from the year 1906, when the testator executed the first of his five wills, no substantial changes were made as to his intentions save that following the death of two of his other sis-ters.   He naturally changed his bequests with respect to them, and, at the time of the execution of the will in question, he not only admittedly possessed testamentary capacity but was most decisive as to his intentions and entirely free from any undue influence whatever from Rosa Graff.   This court cannot conclude the existence

of undue influence from the mere fact of the beneficiary's opportunity to exercise same in the absence of testimony showing its actual existence. [Kuehn v. Ritter, 233 S. W. 5; Kleinlein v. Krauss, supra; Pinson v. Jones, 221 S. W. 80, l. c. 86.]

"Indeed, it is natural and proper that persons occupying family relations should exercise some influence over each other and should remember each other in their wills. . . . The mere fact that some influence is exercised by a person sustaining that relation does not invalidate a will unless it is further shown that the influence destroys the testator's free agency. [40 Cyc. 1148-9; Mayes v. Mayes, 235 S. W. 100.]

It may be argued that the statement made by testator to the witness Smith is sufficient to show the existence of undue influence in the execution of said will. This is no evidence whatever of the truth of the fact stated. As to that, the statement was mere hearsay. It amounted to no more than a verbal act and could be received only as manifestation of the testator's mental condition. [Mayes v. Mayes, supra; Teckenbrock v. McLaughlin, 209 Mo. 533.] A similar situation arose in the Teckenbrock Case and the court there quoted approvingly from the case of Schierbaum v. Schemme, 157 Mo. 1, l. c. 16, where it was said:

"Testimony which purports to relate what a testator said, after making a will, in relation to the causes which influenced him to make it, is in the category of hearsay evidence and is incompetent. . . . Even when a rehearsal of a conversation is admissible in evidence the courts are fond of saying that little weight is given to what dead men are said to have said."

This is true whether the statement be made before or after the execution of the will. [Thompson v. Ish, 99 Mo. 160; Crowson v. Crowson, 172 Mo. 691, l. c. 703.]

Appellant's case is not aided by the suggestion that testator's sister sustained a confidential relation to him. She occupied no fiduciary relation, as appeared in the

case of Canty v. Halpin, 294 Mo. 118, but as a sister she provided a home for him and there was created family relations which fully justified the provisions of his will with respect to her. The record teems with testimony as to the decisive and self-reliant character of the testator in managing his affairs and there is no evidence that his sister, or any other beneficiary, ever discussed with him his affairs. No presumption of undue influence would therefore arise.

A careful search of the record in this case fails to disclose substantial testimony of fraud or undue influence. The trial court should not have submitted the question of undue influence to the jury and, as the jury reached the only result that could be sustained by this court, the judgment must be affirmed without the necessity of a consideration of procedural errors claimed by appellants.

It is so ordered. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion by Reeves, C., is adopted as the opinion of Court in Banc. *David E. Blair, Walker, White* and *Ragland, JJ.,* concur; *Woodson, C. J.,* and *Graves, J.,* dissent; *James T. Blair, J.,* not sitting.