MISSOURI STEEL & WIRE COMPANY, A CORPORATION, APPELLANT, v. EDMONDS & ALLGIER (A. E. ALLGIER ESTATE), RESPONDENT.—136 S. W. (2d) 118.

Springfield Court of Appeals. December 26, 1939.

*R. F. Baynes* and *Creal Black* for appellant.

*William Oliver* and *Finch & Finch* for respondent.

TATLOW, P. J.—This case originated in the Probate Court of New Madrid County, Missouri, upon the plaintiff's filing its demand against the estate of A. E. Allgier, deceased, based upon three invoices of merchandise, aggregating $459.62, purportedly sold in 1935 to the firm of Edmonds & Allgier, contractors and builders, Clarkton and Risco, Missouri.

The administratrix filed an answer to the demand, denying that the goods were purchased by the partnership, but not denying the existence of the partnership. The probate court, by agreement, tried the case without a jury, and rendered a judgment in favor of the claimant for the amount of the demand. The defendant took an appeal to the Circuit Court of New Madrid County, Missouri, where the case was tried before a jury, resulting in a verdict for the defendant, concurred in by eleven of the jurors. The claimant, as the plaintiff below, has properly appealed the case to this court.

The case was submitted to the jury on the appellant's evidence. The respondent offered no evidence.

J. F. Monnig, being duly sworn, on direct examination, testified on behalf of plaintiff, as follows:

"My name is J. F. Monnig. I live in St. Louis, Missouri. I am Secretary and Treasurer of the Missouri Steel & Wire Company. I held that office when the merchandise in issue was sold. I received the letter marked 'Exhibit A' through the U. S. Mail. I did not ship any merchandise on this letter. This letter was on the letterhead of Edmonds & Allgier, Contractors, Risco & Clarkton, Missouri. I received the letter marked 'Exhibit B' on August 23. I received it through the U. S. Mail. It is written on the stationery of Edmonds & Allgier. I received the letter marked 'Exhibit C' on August 28 (1935). I received it through U. S. Mail. It was on the stationery of Edmonds & Allgier, too. I did not ship any merchandise on this letter. A truck driver by the name of Larton (Lorton) came to our place and gave us an order for shingles—gave us an order from Edmonds & Allgier. I immediately called Edmonds & Allgier, on long distance telephone, at Clarkton, Missouri, and they connected me with J. C. Edmonds. He said he was buying for Edmonds & Allgier and the order was O. K. I asked for credit references. He gave me the names of two, one of which was a St. Louis firm. I checked on the St. Louis reference and report was that the firm was good for its obligations. On the strength of that credit reference, I delivered the merchandise to Mr. Larton. These three exhibits are shipping tickets. They itemize the three shipments of merchandise to Edmonds & Allgier. The total amount, as shown by the delivery tickets and invoices, thus shipped was $459.62.

This amount agrees with the amount set out on the original ledger sheet which I hold in my hand. The prices charged represent the fair, reasonable, and market price of the items sold. No part of the account has been paid. The merchandise was shipped to Edmonds & Allgier, Clarkton, Missouri.''

In addition to his direct testimony the cross-examination developed only that the witness had no conversation with Edmonds except his conversation over the telephone, the date of which he fixed as September 4th, the date of the delivery of the goods, and that he had no correspondence or conversation personally with Mr. Allgier, the deceased.

The correspondence and shipping tickets were offered in evidence and consisted of the following:

''Exhibit A.

''Nothing too large or too small.
''No charges on estimations.
''Edmonds & Allgier
''Contractors & Builders

''Clarkton, Mo.                                                  ''Risco, Mo.
''Conran,  Missouri
''July 10, 1935

''Missouri Steel & Wire Co.
''St. Louis, Missouri.

''Gentlemen: Please quote us prices on Steeltex Metal Lath, and kindly send us a catalogue on prices of your material or price lists on all of your building materials.
''Very truly yours,
''Edmonds & Allgier, Contractors.
''By I. C. Edmonds.''

''Exhibit B.

''(Same stationery form—letter dated August 23, 1935.)

''Gentlemen: Have you as many as a car or ½ car of shingles like the ones I bought from you. They were seconds, and in a two tab, or they don't *necessarily* have to be in a two tab. Please quote me prices, if you have in return mail.
''Respectfully yours,
''I. C. Edmonds.''

''Exhibit C.

''Same stationery form as Exhibit A; letter dated Aug. 28, 1935. Letter addressed to Mo. Steel & Wire Co. Written in first person, giving references. Letter signed 'I. C. Edmonds.' ''

"Exhibit D.

"(Shipping Ticket).
"MISSOURI STEEL & WIRE COMPANY
"1400 to 1414 Broadway
"St. Louis, Missouri
"At St. Louis, Mo. 8/25 Del. 9/4

"Customer's Order No. 22712

"Deliver by call
"Charge to Edmonds & Allgier
"Address
"Deliver to Clarkton, Mo.

| "No. Packages—Description | Price | Extension |
|---|---|---|
| "32 Sq 11 1/3 x 36 Red Hex. Seconds ............ | 3.22 | 103.04 |
| "35 Sq 10 x 36 Green Cut out Seconds ............ | 4.00 | 140.00 |
| " 5 1 gal Muriatic Acid ...................... | .50 | 2.50 |
| | | 245.54 |
| "5 containers | .10 | .50 |
| | | 246.04 |

"D 22705
"Received by Ralph Lorton (signed)."

"Exhibit E.

"(Shipping Ticket)
"Same form as above; same billing, date of 9/5/35, shipped to Edmonds & Allgier, Clarkton, Mo., mdse in amount of $174.20. Shipping ticket signed by 'Ralph Lorton.' "

"Exhibit F.

"(Shipping Ticket)
"Same form as 'Exhibits D & E'. Date of 9/16/35. Mdse of value $39.38 sent to Edmonds & Allgier, Clarkton, Mo. Truck driver Ralph Lorton executing receipt for delivery of mdse to him by plaintiff."

"Exhibit G.

"(Carbon copy of Letter)

"August 31st, 1935.

"Edmonds & Allgier,
"Clarkton, Missouri.

"Gentlemen: We just finished unloading the carload containing the second shingles and were agreeably surprised to find two very fine lots of seconds.

. . . . . .

"If you want any of these, we suggest that you send in your order at once as we do not believe they are going to last so awfully long.

"Yours very truly,
"Missouri Steel & Wire Co.

"JTM:MS."

"Exhibits H, I, J & K" are likewise carbon copies of letters written by Missouri Steel & Wire Company to Edmonds & Allgier, Clarkton, Missouri, and deal with price quoting or shipment of merchandise in issue.

"Exhibit L.

ARTICLE OF AGREEMENT

"This article of agreement made and entered into this 15th day of November, 1935, by and between Consolidated School District No. 10 of New Madrid County, Missouri, party of the first part, and Edmonds & Allgier, a copartnership composed of Ira Edmonds and A. E. Allgier, hereinafter referred to as the contractors, party of the second part, WITNESSETH:

". . . (Body of building contract)

"In Witness Whereof the said party of the first part has hereby *called* (caused) these presents to be executed by its President and attested by its Secretary by authority of its Board of Directors and second party has executed this instrument by the signature of A. E. Allgier a member of the firm.

"Consolidated District No. 10
"New Madrid County, Mo.
"By Earl Cambrian President
"Edmonds & Allgier
"By A. E. Allgier a member of the firm.

"Attest:
"W. E. Scobey
"Secretary."

"Exhibit M.

"This Agreement made the Fifth day of December, 1934, by and between I. C. Edmonds and A. E. Allgier, a copartnership doing business as Edmonds & Allgier, of Clarkton, Missouri, hereinafter called the Contractors, and the Board of Education, Consolidated School District No. 10, New Madrid County, Missouri, Marston, Missouri, hereinafter called the owner,

"Witnesseth, . . . (here body of contract)

"In Witness Whereof the parties hereto have executed this agreement, the day and year first above written.

"Edmonds & Allgier
"By I. C. Edmonds
"By A. E. Allgier
"Con. Sch. Dist. No. 10
"New Madrid Co., Missouri

"By J. H. Avery, President
"By W. E. Scobey, Secretary."

"Exhibit N.

"This is a contract made and entered into June 3, 1935, by and between Edmonds & Allgier, Clarkton, Mo., and Consolidated Dist. No. 3, New Madrid County, Conran, Missouri, with execution clause as follows:

"In Witness Whereof the parties hereto have executed this agreement, the day and year first above written.

"Edmonds & Allgier
"By I. C. Edmonds
"Contractor."

The abstract further shows:

"No evidence was offered on behalf of the defendant.

"The plaintiff offered two instructions, both of which were given, and the defendant offered one instruction other than its demurrer, which was also given. The verdict of the jury was for the defendant. The plaintiff offered no peremptory instruction."

The error relied upon by the appellant is the giving of defendant's Instruction "A," for the reason that there is no evidence to support it. The instruction so given is as follows:

"The court instructs the jury that, if you find and believe from the evidence that Edmonds ordered the materials from plaintiff as an individual, then your verdict must be for the defendant."

The only evidence that the respondent has pointed out, or that we have been able to find in the record to support this instruction, is the letter dated August 23, 1935, on the letterhead of the firm, signed by I. C. Edmonds, and copied in the above statement.

The abstract shows:

"At the close of the plaintiff's case the defendant filed a demurrer which was overruled by the court."

In the trial court, the respondent contended that she was entitled to a directed verdict in her favor. In this court, she contends that the judgment should be affirmed because the appellant did not request the court to direct a verdict in its favor. This seems to imply that the respondent now concedes that, if the appellant had requested the court to direct a verdict for it, the court should have done so.

In our opinion the appellant not only had ample evidence to justify and require the submission of the case, but, on the undisputed evidence in the case, was entitled to a verdict. Whether the appellant was entitled to have the court *direct* a verdict in its favor, presents a question which we will discuss later.

The answer does not deny the partnership, and the undisputed evidence shows:

First, that there was a firm composed of I. C. Edmonds and A. E.

Allgier, and that they were contractors and builders, so engaged, at Clarkton and Risco, Missouri. This fact is shown, not only by the lettersheads of the firm, but also by the several contracts entered into between the firm and school districts. The first contract was entered into on the 5th day of December, 1934, to which the deceased signed the firm name. The second contract was entered into on the 15th day of November, 1935, to which the deceased also signed the firm name. The third contract was entered into on the 3rd day of June, 1935, to which I. C. Edmonds signed the firm name. These contracts are not set forth in the abstract in their entirety, but it seems to be assumed by both parties that they referred to the building and repairing of school buildings. Hence, the documentary evidence affirmatively shows that there was such a firm. This being so, it was not necessary for the court to submit to the jury the question of whether there was, or was not, such a firm. Under the answer and the documentary evidence in the case, the instructions could assume the existence of the firm.

Second, the letterheads and contracts show that the firm was engaged as contractors and builders, and, in the conduct of its business, would need such supplies as the appellant's evidence shows that it sold to the firm. There was no evidence that I. C. Edmonds was individually engaged in such business or that he had any occasion to buy that character of material for his own use.

Third, the uncontradicted evidence of Mr. Monnig, the secretary and treasurer of the appellant, is:

". . . A truck driver by the name of Larton (Lorton) came to our place and gave us an order for shingles—gave us an order from Edmonds & Allgier. I immediately called Edmonds & Allgier, on long distance telephone, at Clarkton, Missouri, and they connected me with J. C. Edmonds. He said he was buying for Edmonds & Allgier and the order was O. K. I asked for credit references. He gave me the names of two, one of which was a St. Louis firm. I checked on the St. Louis reference and report was that the firm was good for its obligations. On the strength of that credit reference, I delivered the merchandise to Mr. Larton. . . ."

This clearly and unequivocally shows that the credit was extended, not to Edmonds *individually*, but to the firm; that the sale was made, not to Edmonds *individually*, but to the firm; and that the actual delivery was made to the truck driver, who, Edmonds said, was representing the firm instead of himself *individually*.

Fourth, the shipping tickets show that the goods were charged to Edmonds & Allgier and receipted for by Ralph Larton who, Edmonds told appellant's secretary, was the firm's agent, and, as such, was authorized to receive the goods. The correspondence relating to this matter consists of three letters. The first letter, to which the firm name is signed by I. C. Edmonds, requested prices on Steeltex Metal Lath,

and asked for a catalog. The second letter is dated August 23, 1935, an is the only evidence relied upon by the respondent to show that the goods were sold, not to the firm, but to Edmonds individually. That letter, written on the letterhead of the firm, is as follows:

"Gentlemen: Have you as many as a car or ½ car of shingles like the ones I bought from you. They were seconds, and in a two tab, or they don't *necessarily* have to be in a two tab. Please quote me prices, if you have in return mail.

"Respectfully yours,

"I. C. Edmonds."

There was also a letter dated August 28, 1935, addressed to the appellant, which letter was written in the first person, gave references and was signed by I. C. Edmonds.

These two letters, and particularly the letter of August 23rd, used the pronouns "I" and "me," and constitute the sole basis for respondent's contention that the sale was made, not to the firm, but to Edmonds individually.

A carbon copy of appellant's letter of August 31, 1935, as contained in the abstract, is as follows:

"August 31, 1935

"Edmonds & Allgier,

"Clarkton, Missouri

"Gentlemen: We just finished unloading the carload containing the second shingles and were agreeably surprised to find two very fine lots of seconds.

"If you want any of these, we suggest that you send in your order at once as we do not believe they are going to last so awfully long.

"Yours very truly,

"Missouri Steel & Wire Co."

This shows how the appellant construed this letter; that is, that it was a firm engaged in the contracting business, and not Mr. Edmonds individually, that desired to purchase the shingles. The letters themselves (except for the use of the pronouns "I" and "me" in the letter of August 23rd) can bear no other construction than that a sale, if made, was to be made to the firm and not to I. C. Edmonds individually. The letter of August 23rd, in our opinion, does not constitute even a scintilla of evidence that the sale, if and when made, was to be made, not to the firm, but to Edmonds; but, even if it could be construed as constituting a scintilla of evidence, such rule, if it ever was in force in this state, has now been abolished.

In Van Raalte v. Graff, 299 Mo. 513, 253 S. W. 220, l. c. 223, it is said:

"In searching the evidence on demurrer, so as to determine whether a case be made for the jury, substantial evidence for plaintiffs must be found, as the 'scintilla' doctrine is no longer the rule in this juris-

diction. [Williams v. Railroad, supra; Pleasants v. Fant, 89 U. S. (22 Wall.) 116, 22 L. Ed. 780. . . .]''

In Kramer v. Grand National Bank of St. Louis, 336 Mo. 1022, 81 S. W. (2d) 961, l. c. 967, it is further said:

''. . . The burden, however, was upon appellant to submit substantial evidence tending to sustain one or more of the specifications of negligence properly pleaded by him. [Citing cases.] . . .''

All of the recent decisions require *substantial* evidence, rather than a *scintilla* of evidence, to make a submissible case.

Under the Missouri rule, even though the undisputed evidence in the case shows that the sale was made to the firm and not to Edmonds individually, the court was not permitted (even if so requested) to give a directed verdict for the plaintiff, because the defendant is entitled to have the jury determine the credibility of the testimony offered by the plaintiff, even though the defendant offered nothing to contradict such testimony.

In the case of Gannon v. Gas Co., 145 Mo. 502, l. c. 517, 518, the court, in arguing the question, assumes the exact state of facts that we find shown in the record in the instant case:

''. . . Suppose that a suit has been brought upon an open account for goods forwarded by plaintiff to defendant at his request, upon which issue has been joined by answer. A jury is called to try the cause, and the most positive testimony is offered as to the existence of every averment of plaintiff's petition, and defendant offers no proof whatever, surely no one would say that the court had the rights to direct a finding for plaintiff upon the uncontradicted testimony, and why? Because defendant asked to have the facts of the case determined by a jury, and not by the court, as would be done if the court could direct a given finding. Because 'the right of trial, as heretofore enjoyed, shall remain inviolate,' etc. [Section 28 of article II, Constitution of Missouri. See Rev. Stat. 1889, sec. 2131.]''

Courts of equal learning, as our Supreme Court, the Supreme Court of the United States and perhaps a majority of the courts of last resort of the various states, have often said, under just such states of facts, that the court should direct the jury to find a verdict in accordance with the undisputed facts clearly shown by the evidence.

Even though the defendant asked to have the facts of its case determined by a jury, it would still seem that there should be some issue of fact for the jury to determine. Otherwise the request would seem to be entirely meaningless. This would seem to be so unless somewhere in the record there is some fact or circumstance from which the jury might have found that the testimony of the witness was not credible. Absent such a fact, and where the testimony of the witness is supported and corroborated by documentary evidence, and where the respondent does not, in fact, even claim that the witness' testimony is untrue, it is somewhat hard to see where there is any question of fact

for the jury to determine. Nevertheless, the rule as announced in the Gannon case, *supra*, has been repeatedly followed in this State. The most recent case is Woehler v. St. Louis, 342 Mo. 237, l. c. 240, 114 S. W. (2d) 985, where the court quotes from the case of Cluck v. Abe, 328 Mo. 81, 40 S. W. (2d) 558, as follows:

" 'In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. . . .' "

Under these and many other authorities that might be cited, the appellant in this case was not entitled to have the court direct the jury to find a verdict for it. It waived nothing by failing to request the court to direct a verdict for it, as the respondent's argument would seem to imply.

The appellant has cited a list of cases announcing the elementary rule that it is error for the court to give an instruction where there is no evidence in the case to support it. The giving of such an instruction, where there is no evidence to support it, and which is calculated to mislead the jury, is *reversible* error.

The giving of respondent's instruction "A" (heretofore copied) was the equivalent of telling the jury that, because Edmonds used the pronouns "I" and "me" in the letter of August 23, 1935 (hereinbefore referred to, written on the letterhead of the firm and signed by I. C. Edmonds), it was authorized to disregard the evidence of the witness Monnig that Edmonds told him he was buying the goods for the firm; that the credit was extended to the firm and not to Edmonds individually; that the goods were delivered to Larton who, Edmonds told the witness, was the agent of the firm authorized to receive the goods for the firm; and also the other correspondence and the shipping tickets.

Under that instruction the jury could have believed the testimony of the witness Monnig and the documentary evidence that the sale was made to the firm, and still have found, as it did, that the letter of August 23rd, considered by itself and disconnected from all the other evidence in the case, did not show that the sale was made to the firm, but indicated that it might have been made to Edmonds individually. If Monnig's evidence (which was supported by the entire correspondence and the shipping tickets) was true, the sale could not have been made to Edmonds individually. In other words, this instruction authorized the jury to base its verdict solely upon the fact that the letter was signed by Edmonds only, and that he used the personal pronouns. The giving of this instruction, in our opinion, was clearly erroneous. The letter, when considered with the other letters and with the entire evidence in the case, in our opinion, constituted no

substantial evidence upon which to base the instruction. It was calculated to, and we think did, mislead the jury, causing it to render a verdict contrary to the undisputed evidence in the case. Under the Gannon and other cases, all that the defendant was entitled to have the jury pass upon was whether Monnig's evidence was credible when considered and weighed with the entire evidence in the case. Plaintiff was entitled to have the jury instructed upon the basis of assuming that, if Monnig's testimony was true, its verdict should be for the plaintiff. That is to say, the court should have instructed the jury, in substance: That, if it should find and believe from the evidence that I. C. Edmonds, as a member of the contracting firm of Edmonds & Allgier, at the time the goods were purchased, told the agent of appellant that he was buying the goods for Edmonds & Allgier; and, if it should find and believe from the evidence that Edmonds gave appellant's agent a credit reference of one or two firms, that appellant checked the references and found that the firm was good for its obligations, and, on the strength thereof delivered the goods to a truck driver, who, Edmonds told appellant's agent, was authorized as the agent of Edmonds & Allgier to receive the goods for and on behalf of the firm, then the sale was made to the firm of Edmonds & Allgier, and its verdict should be for the plaintiff.

The defendant was entitled to have the jury instructed to the converse of the above or to present to the jury in a negative way the converse of the facts hypothecated in the instruction. The only possible theory upon which the defendant was entitled to have instruction ''A'' given, is that it negatives the facts which it was necessary for the jury to find in order to entitle plaintiff to recover. [Woehler v. St. Louis, 342 Mo. 1. c. 241.] In a technical, theoretical, argumentative and abstract way, the instruction negatived the affirmative facts that the appellant was required to prove in order to recover. If the sale was made to the firm, it, of course, was not made to Edmonds individually, and *vice versa.* When the evidence is considered as a whole, there is no substantial evidence to support the theory that the sale was made to Edmonds individually. The evidence of Monnig, if true, conclusively shows that the sale was, in fact, made to the firm, and not to Edmonds individually. If Monnig's evidence (which is corroborated and supported by the shipping tickets) is true, the credit was extended to the firm. There is some evidence in the case that Edmonds could not be located and that he had perhaps left the country. There was no direct evidence in the case that the firm actually used the shingles. On the other hand, there is no evidence that the firm did not do so; but, if Edmonds, as a member of the firm and as testified to by Monnig, bought the shingles for the firm on the credit of the firm, and if the shingles were delivered to a truck driver who, he told appellant's agent, was authorized to receive them for the firm, the firm would still be liable, even though Edmonds, after receiving the goods, used

them individually so that the firm did not get the benefit of the goods. This is the most that can possibly be made out of the evidence in the case and is only a surmise and a suspicion without any evidence to support it, so far as the record shows.

Respondent cites and relies upon two cases to sustain the giving of instruction "A." The first case was rendered in 1821, shortly after the admission of Missouri to the union. It was rendered long before the adoption of the present civil code. The case is Wiggins v. Hammond, 1 Mo. 121, and the facts, as there recited, are:

". . .:—That early in the spring of 1818, Hammond borrowed of the plaintiff $300, with which, he had said, he wanted to pay off the expenses of a boat load of groceries, then lying at the wharf at St. Louis, promising at the same time, to return the money in a few days—that there was such a firm or co-partnership as Hammond & Bouis, and that Hammond, the defendant, was one of the firm—that the money was borrowed by Hammond, without mentioning whether for himself or the firm, and that Bouis was not present—that after the goods had been stored up at St. Louis, Hammond introduced Bouis to a witness, as his partner, and that soon after the groceries were opened for sale, the partnership was dissolved. . . ."

It will be observed that Hammond borrowed the money of the plaintiff without saying whether he was borrowing it for the firm or for himself.

In the instant case, if the plaintiff's testimony is true (and the question of whether it is true or false is all that should have been submitted to the jury), Edmonds bought the goods, saying that he was buying them for the firm, the credit was extended to the firm, the charge was made against the firm and the goods were delivered to the firm.

The opinion in the Hammond case, *supra*, concludes:

"Had the cause in the Court below been tried before a jury, they would have determined, by their verdict, whether the money lent by Wiggins, and borrowed by Hammond, was on the individual responsibility of the latter, or on that of him and Bouis in co-partnership; (a) and as the parties thought proper to submit the facts, as well as the law, to the Judge, this Court is not prepared to say that he erred in deciding the fact in the manner he did. . . ."

The jury, in the instant case, was authorized to determine only whether the goods were sold to and on the responsibility of the firm. If the jury followed the evidence, and if it believed the witness Monnig, it was bound to find that they were. This is all that should have been submitted to the jury. The letter of August 23, 1935, by itself, and without reference to the entire evidence in the case, does not affirmatively say whether the writer desired to purchase the goods personally or for the firm. The evidence of the witness Monnig shows that he did not sell the goods on that letter but that he sold the goods

to the firm, on the firm's credit, and delivered the goods to the firm. Under such state of facts it was clearly error for the court, even though it might and no doubt did believe that the witness Monnig was telling the truth (there being nothing to impeach his testimony but, on the contrary, it being corroborated by the documentary evidence in the case), to make the letter of August 23rd a basis for a finding against the appellant. Hence, in our opinion, the Wiggins case, *supra*, does not support the respondent's contention.

The other case cited by respondent is Root Grain Co. v. Fowler, 91 S. W. (2d) 107. This case gives even less support than does the Wiggins case to the giving of instruction "A" on behalf of the respondent. The facts stated by the court there are:

"The plaintiff's first petition alleged that it was a corporation; that the defendants Thomas N. Fowler and Earl E. Bryson were partners under the name of Thomas N. Fowler; that defendants, beginning on April 26, 1929, and ending November 10, 1930, purchased and sold grain through plaintiff as its broker . . .; that the balance due plaintiff on said account was $4,982.12, for which judgment was prayed.

"The record does not show that the defendant Bryson was served with summons nor that he appeared in the action. The defendant Fowler answered under oath denying the partnership. The plaintiff thereupon filed its second petition; alleged therein that it was a corporation; that Bryson was at all of the times mentioned in the petition an employee of plaintiff, and as such appeared for it in the 'pit' in the Kansas City Board of Trade; that defendant Fowler was, during all of said times, engaged in buying and selling grain on the Kansas City market through plaintiff as his broker; that defendant Fowler, beginning on April 26, 1929, and ending November 10, 1930, purchased and sold through plaintiff, as his broker, on the Kansas City Market and the Chicago market, various lots of grain, the items of which were stated in an exhibit attached to the petition; that at all of said times plaintiff had no notice that said account was not the sole obligation of the defendant Fowler; and that during all of said times plaintiff was informed that said account was the obligation of the defendant Fowler and that credit was extended to Fowler therefor. The petition further alleged facts to the effect that both Fowler and Bryson, subsequent to the last item of the account, made certain statements and had certain transactions between themselves which estopped each of them from denying that they were partners. The prayer for judgment was the same as the prayer in the first petition. The defendant Fowler filed a motion to strike the second petition upon the ground that the cause of action stated therein was a departure from the cause of action stated in the first petition. The motion was sustained and the amended petition stricken from the record. The plain-

1042

tiff filed an election to stand upon the second petition, and refused to plead further. . . ."

Thereupon the court entered judgment dismissing the case. In due time the plaintiff filed a motion to set aside the order and judgment of the court last above mentioned. The motion was sustained, and the defendant, Fowler, appealed.

Fowler had the right to appeal because the setting aside of the judgment was the equivalent of the granting of a new trial. The judgment of the court granting the new trial was affirmed for the reason that Fowler, who was served and appeared in the case, was liable for the account whether there was or was not a partnership. Concerning this the court said:

"The second petition charged that the defendant Fowler owed a debt—the same debt which the original petition alleged that Fowler and Bryson owed. The existence or nonexistence of a partnership was no part of the plaintiff's cause of action. The legal effect of the allegation charging partnership was to say that each one of the defendants was liable for the acts of the other in respect to partnership matters." [l. c. 108.]

In other words, the plaintiff in that case was entitled to recover against Fowler, who was served, either on the theory that it was a partnership and he was one of the parties, or that there was no partnership and he individually contracted the debt. Under the common law practice which was in force when the Wiggins case was decided, having sued on the theory of a partnership obligation, there could be no recovery on the theory of an individual obligation. If it turned out that there was no partnership, the plaintiff, in order to recover on the individual obligation, would have to start all over again. The opinion in that case, in discussing the question as to whether there had been a partnership, said:

"The second petition does not allege that plaintiff believed, or acted upon the belief, that Fowler and Bryson were partners. In the absence of such allegations, the petition failed to state facts sufficient to estop Fowler from claiming that Bryson was his partner. . . ." [l. c. 108.]

This is of course true, but, so far as we can see, it throws no light on the instant case.

There was no conflict in the evidence, nor was anything shown to discredit the testimony of the witness Monnig. While the respondent is entitled to have the jury pass upon and determine whether it believes or does not believe Monnig's testimony, respondent is not entitled to have the usual credibility instruction given with reference to the witnesses in this case. [Woehler v. St. Louis, 342 Mo. l. c. 241, 242, and cases there cited.]

In our opinion, the court clearly erred in the giving of respondent's Instruction "A," which was not based upon any evidence in the case,

and which was calculated to, and no doubt did, mislead the jury. It is our further opinion that the court erred in not setting aside the verdict for the reason that it was contrary to the undisputed evidence in the case.

The case is reversed and remanded for a new trial in accordance with this opinion, if the evidence upon the second trial is the same as upon the first trial. *Smith* and *Fulbright, JJ.*, concur.